JOURNAL ENTRY AND OPINION
{¶ 1} For the second time, defendant-appellant David Ayers appeals from the trial court's denial of his application pursuant to R.C. 2953.71 et seq. for DNA testing. His appeal is filed pursuant to App. R. 9(A).
 {¶ 2} Ayers presents two assignments of error. He asserts the trial court's "summary" denial of his application was in contravention of both the statutory scheme, and the record itself.
 {¶ 3} Since the App. R. 9(A) record of this case does not contain the original trial transcript, this court's review of the propriety of the trial court's detailed decision is limited to what is contained in the file. The file of this case demonstrates the trial court properly denied Ayers' application pursuant to R.C. 2953.74; consequently, his assignments of error are overruled, and the trial court's decision is affirmed.
 {¶ 4} This court originally set forth the underlying facts surrounding Ayers' convictions for aggravated murder, aggravated burglary, and aggravated robbery of the elderly victim, Dorothy Brown, in State v.Ayers, Cuyahoga App. No. 79134, 2002-Ohio-4773 (hereinafter referred to as Ayers I). In pertinent part, those facts follow:
 {¶ 5} "* * * The victim's body was discovered at approximately 2:45 p.m. on the afternoon of December 17, 1999 and showed signs of numerous serious *Page 3 
injuries, including a fractured skull, trauma to the brain, fractures of the face, [and] a broken finger on each hand * * *. Although the victim was discovered nude from the waist down * * *, there were no signs that a sexual assault had occurred.
 {¶ 6} "There were signs of robbery at the scene * * *. There were no signs of forced entry * * *.
 {¶ 7} "The appellant, although not elderly or disabled, was also a resident * * * of the * * * apartments. The appellant was employed * * * as a special police officer * * *.
 {¶ 8} "It is not disputed that the appellant knew the victim fairly well * * * and that he had been in her apartment on several occasions prior to December 17, 1999.* * *
 {¶ 9} "The phone records relating to appellant's home phone showed that he received two phone calls from a Kenneth Smith on December 17th.* * * Smith testified at trial that the appellant told him about the murder of Ms. Brown during the course of these phone calls * * *. This testimony is significant because both of the phone calls were made prior to the time that the victim's body was discovered * * *.
 {¶ 10} "* * * According to [state's witness Donald] Hutchinson's testimony, the appellant told him that he [went] to the victim's unit in the early morning *Page 4 
hours of December 17, 1999 with the intention of stealing money[,] * * * killed the victim when she woke up[, and] told him that the murder weapon was a small, black iron that was located in the vicinity of the recliner where the victim was positioned."
 {¶ 11} After reviewing the record in light of Ayers' assignments of error, this court affirmed his convictions, but remanded the case for resentencing in accordance with the statutes in effect at the time.
 {¶ 12} On November 3, 2004, Ayers, proceeding pro se, filed an application for DNA testing. Ayers indicated he sought testing of certain materials found at the crime scene, viz., blood, pubic hair found in the victim's mouth, and "skin under [the victim's] nails." In explaining "why a DNA test would have changed the outcome of [his] case," Ayers wrote, "The DNA that was collected at the crime scene did not match [his] DNA that [was] collected from [him]."
 {¶ 13} The state filed a motion to deny the application. In its brief in support of the motion, the state cited to relevant portions of the transcript of Ayers' trial.
 {¶ 14} In response to Ayers' request for testing on blood and hair, the transcript demonstrated that DNA tests were conducted on the "blood and hairs" collected at the crime scene, and the jury was informed "the results of those tests did not link the defendant to any of the items of evidence collected." (Emphasis *Page 5 
added.) The state argued that, since "[c]onclusive DNA tests were already performed on hair and blood evidence," Ayers was "not entitled to further testing on those items."
 {¶ 15} In response to Ayers' request for testing on scrapings taken from under the victim's fingernails, the transcript further demonstrated that "there was no biological material collected from the fingernail scrapings." This fact also had been presented to the jury. It followed that, without "biomaterial," DNA testing of the scrapings was a waste of resources.
 {¶ 16} The trial court subsequently denied Ayers' application. Its judgment entry stated, "After consideration of the briefs filed in this matter and the record materials, the court hereby finds that the defendant has failed to demonstrate that DNA testing * * * would be outcome determinative as defined by R.C. 2953.71(L)."
 {¶ 17} Ayers filed an appeal from the trial court's judgment entry. InState v. Ayers, Cuyahoga App. No. 86006, 2005-Ohio-6972 ("Ayers II "), this court specifically addressed only the first of his three assignments of error, determining that the trial court's explanation was statutorily insufficient.
 {¶ 18} This court further stated, however, that "neither the state nor the trial court initially complied with other provisions of R.C. 2953 et seq."; these included the subsections that required the state "to prepare a report regarding *Page 6 
the availability of DNA samples" and that required the trial court to order the prosecutor to prepare that report.
 {¶ 19} It can be gleaned from the record that the foregoing portion of the Ayers II opinion dealt with the argument Ayers raised in his second assignment of error. His third assignment of error, however, was neither set forth nor disposed of in any manner.
 {¶ 20} The state appealed this court's decision in Ayers IIto the supreme court. The supreme court reversed the decision "on the authority of State v. Buehler, 113 Ohio St.3d 114, 2007-Ohio-1246" and remanded the case "to the court of appeals" with the instruction to consider Ayers'"remaining assignments of error."
 {¶ 21} On remand, this court determined that the supreme court's reversal pertained only to the argument Ayers raised in his "second" assignment of error. State v. Ayers, Cuyahoga App. No. 86006,2007-Ohio-5939, ¶¶ 5-7. Based upon the doctrine of the "law of the case," this court "reverse[d] and remand[ed] this matter" to the trial court, in accordance with the previous disposition of Ayers' first assignment of error, "for further explanation" for the court's reasons for its denial of Ayers' application. Id., ¶ 9. Ayers' third assignment of error, which argued against the trial court's conclusion that the DNA test would not be "outcome determinative," was declared "moot." *Page 7 
 {¶ 22} On remand to the trial court, the court duly issued a full opinion with respect to its denial. In pertinent part, the court stated it considered Ayers' application, the state's brief in opposition, "and the file and records pertaining to this proceeding." The court set forth the applicable sections of R.C. 2953.74, then applied those sections to the items Ayers sought to have tested.
 {¶ 23} As to the hair, the court noted that, "The trial transcript reveals that Curtiss Jones of the Cuyahoga County Coroner's Office Trace Evidence Department testified that no items collected [from the victim or the crime scene] as trace evidence were linked to Ayers. * * * The items that were [able to be] tested or analyzed excluded Ayers as the source." The jury "was informed that none of the hair was consistent with Ayers, yet convicted him." Thus, "Ayers has failed to demonstrate that DNA testing would be outcome determinative."
 {¶ 24} As to the blood, "The sole reference to blood evidence found in the record is suspected blood found on a paper towel. * * * [It] was DNA tested and matched the victim's DNA profile. * * * Further, the fact that Ayers was excluded as the source of the blood was presented to the jury, which nevertheless convicted Ayers. Ayers, therefore, has failed to show that DNA testing of the blood would be outcome determinative."
 {¶ 25} As to the fingernail scrapings, the record failed to reflect that any "skin" was found under the victim's fingernails. "A review of the trial testimony *Page 8 
and Coroner's Office Laboratory Examination Report reveals that only fibers were noted within the victim's fingernail scrapings. * * * * [N]othing else of note." Since "the record establishes that no biological material was obtained * * * [it follows] no parent sample exists." Under these circumstances, the court was "precluded from accepting Ayers' application with respect to the fingernail scrapings."
 {¶ 26} For all the foregoing reasons, the trial court denied Ayers' application.
 {¶ 27} Ayers challenges the trial court's decision with the following assignments of error.
 {¶ 28} "I. The trial court erred in summarily denying the DNA testingpetition [sic] of David Ayers by concluding that there was no parentsample for the fingernail scrapings without first requiring the state tofurnish an inventory of what biological evidence existed.
 {¶ 29} "II. The trial court erred in summarily denying the DNA testingpetition [sic] of David Ayers on the basis that testing of the hair andblood would not be outcome determinative."
 {¶ 30} Ayers argues in his first assignment of error that, with respect to the fingernail scrapings, the trial court wrongly concluded no "parent sample" *Page 9 
existed. Ayers asserts the state first must prepare an inventory to establish that fact.
 {¶ 31} In his second assignment of error, Ayers argues that the trial court's ultimate conclusion was flawed. He contends that the record cannot conclusively demonstrate, as could DNA analysis, that every piece of biological material excluded him as the source, and that this evidence could have swayed the jury to acquit him of the crimes.
 {¶ 32} This court disagrees with Ayers for the following reasons.
 {¶ 33} First, the trial court's opinion clearly cannot be characterized as "summary," as Ayers claims in his assignments of error.
 {¶ 34} Second, the trial court's decision as to "how to best use judicial resources" is reviewed for an abuse of discretion. State v.Taylor, Erie App. No. E-07-035, 2007-Ohio-7105, ¶¶ 9-10. No abuse of discretion occurred in this case.
 {¶ 35} In Buehler, the supreme court addressed the statutory requirements and determined that "a trial court should exercise its discretion * * * as to whether it will first determine whether the inmate has demonstrated that the DNA testing will be outcome-determinative, or whether it should order the prosecuting attorney to prepare and file a DNA evidence report * * *." Id., at paragraph two of the syllabus. *Page 10 
 {¶ 36} The court further stated that, pursuant to the statutory scheme, "if a trial court decided that a DNA test exclusion result would not be outcome-determinative, the court would have no obligation to accept the application and would have no need for the prosecuting attorney to prepare and file a DNA evidence report pursuant to R.C. 2953.75. On the other hand, if the court knows or determines thatDNA material had been collected from the crime scene but that the parent sample is no longer available for testing, that determination would moot the issue of whether the test result would be outcome-determinative." Id., ¶ 31.
 {¶ 37} In this case, the trial court's review of the record showed that, given the information that had been already provided to the jury, "further examination of [any] DNA evidence gathered would be futile."State v. Taylor, supra, ¶ 13. Moreover, no biological materialexisted in the fingernail scrapings. DNA testing under these circumstances would be fruitless as well as pointless.
 {¶ 38} "The eligible inmate must demonstrate that an exclusion result of a DNA test would alter the trial result." Id., ¶ 9, citingBuehler, ¶ 30. If, as in this case, the record does not provide any corroboration, the trial court does not abuse its discretion in refusing to accept the application.
 {¶ 39} Based upon the foregoing, Ayers' assignments of error are overruled.
 {¶ 40} The trial court's decision is affirmed. *Page 11 
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 SEAN C. GALLAGHER, P.J., and PATRICIA ANN BLACKMON, J., CONCUR *Page 1